# IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. CROIX

JAMES CODRINGTON, as Assignee
of the rights of Crosstech VI, Inc., and
EDWIN CORREA,

        Appellants,

v.

STEADFAST INSURANCE
COMPANY (STEADFAST), DEEP
SOUTH SURPLUS OF TEXAS, L.P.,
and CRC SCU f/k/a CRUMP INS.
SERVICES,

        Appellees.

Case No. 1:19-cv-00026

## NOTICE OF APPEAL

Notice is hereby given that Plaintiffs, in the above-captioned case, by and through undersigned counsel, appeal to the Third Circuit Court of Appeals the following Orders of the District Court of the Virgin Islands, Division of St. Croix:

- Judgment in favor of Defendant CRC and all subsidiary orders that led to the entry of final judgment. Report and Recommendation dated February 28, 2023, attached as **Exhibit 1;** Order Adopting in Its Entirety dated March 31, 2023, attached as **Exhibit 2**.

- Judgment in favor of Defendant Steadfast and all subsidiary orders that led to the entry of final judgment. Report and Recommendation dated June 23, 2023, attached as **Exhibit 3;** Order Adopting in Its Entirety

*Codrington, James, et. al. v. Steadfast Insurance Company, et. al.*, Case No. 1:19-
cv-00026
**NOTICE OF APPEAL**
Page 2

dated September 29, 2023, attached as **Exhibit 4**.

RESPECTFULLY SUBMITTED
LEE J. ROHN AND ASSOCIATES, LLC
Attorneys for Appellants

DATED:  October 27, 2023                  BY:  ___/s/ Rhea R. Lawrence_____
                                          Rhea R. Lawrence, Esq.
                                          VI Bar No. 1192
                                          1108 King Street, Suite 3 (mailing)
                                          56 King Street, Third Floor (physical)
                                          Christiansted, St. Croix
                                          U.S. Virgin Islands 00820
                                          rhea@rohnlaw.com
                                          info@rohnlaw.com

*Codrington, James, et. al. v. Steadfast Insurance Company, et. al.*, Case No. 1:19-cv-00026
**NOTICE OF APPEAL**
Page 3

## CERTIFICATE OF SERVICE

      **THIS IS TO CERTIFY** that on October 27, 2023, I electronically filed the foregoing with the Clerk of the Court using the electronic filing system, which will send a notification of such filing to the following:


W. Mark Wilczynski, Esq.
Law Office of Mark Wilczynski, Esquire
Palm Passage Suites C 20-22
P.O. Box 1150
St. Thomas, VI  00804
Email Address: mwilczynski@usvilaw.com;
Lauren@usvilaw.com; Nikki@usvilaw.com
   Attorney For: Steadfast Insurance Company

Lauren Baio, Esq.
GrayRobinson, P.A.
401 E. Jackson Street, Ste. 2700
Tampa, FL  33602
Email Address: lauren.baio@gray-robinson.com
Attorney For: CRC SCU f/k/a CRUMP INS. SERVICES

Robert Kuczynski, Esq.
Beckstedt & Kuczynski LLP
2162 Church Street
Christiansted, VI  00820
Email Address: robb@BeckstedtLaw.com;
maureen@beckstedtlaw.com
Attorney For: CRC SCU f/k/a CRUMP INS. SERVICES

*Codrington, James, et. al. v. Steadfast Insurance Company, et. al.*, Case No. 1:19-cv-00026
**NOTICE OF APPEAL**
Page 4

Veronica Andrea Meza, Esq.
GrayRobinson, P.A.
333, SE 2nd Avenue, Suite 3200
Miami, FL  33131
Email Address: Veronica.Meza@gray-robinson.com
Attorney For: CRC SCU f/k/a CRUMP INS. SERVICES


BY:   */s/ Rhea R. Lawrence*  (dvn)

| DISTRICT COURT OF THE VIRGIN ISLANDS |
|---|
| DIVISION OF ST. CROIX |

**JAMES CODRINGTON,**

          **Plaintiff,**

    **v.**

**STEADFAST INSURANCE CO.,
CLARENDON AMERICAN INSURANCE
COMPANY, DEEP SOUTH SURPLUS
OF TEXAS, and CRC SCU
f/k/a CRUMP INS. SERVICES,**

          **Defendants.**
_____

**1:19-cv-00026-MEM-EAH**

**TO:**    **Lee J. Rohn, Esq.
Jennifer Sue Koockogey, Esq.**
        *For Plaintiffs*
    **Mark Wilczynski, Esq.**
        *For Steadfast Ins. Co.*
    **Robert J. Kuczynski, Esq.
David S. Hendrix, Esq.
Veronica Andrea Meza, Esq.**
        *For CRC SCU*

## <u>REPORT AND RECOMMENDATION</u>

    **THIS MATTER** comes before the Court on an Order referring all pending dispositive

matters in this case to the undersigned for a Report and Recommendation ("R&R"). Dkt. No.

190. In this R&R, the Court addresses the pending dispositive motion: the Renewed Motion

to Dismiss for Lack of Personal Jurisdiction or, in the Alternative, to Transfer Venue, filed

by Defendant CRC SCU f/k/a Crump Ins. Services ("CRC"),[1] Dkt. Nos. 157, 158. Plaintiffs

---

[1] CRC SCU states that it was incorrectly named in this lawsuit: its correct name is CRC
Insurance Services, Inc. Dkt. No. 158 at 1.



opposed the motion, Dkt. No. 161, and CRC filed a reply, Dkt. No. 165. For the reasons

stated below, this Court recommends that the Renewed Motion to Dismiss be granted.

## BACKGROUND

### I.     The Complaint

In April 2019, James Codrington, as Assignee of the rights of Crosstech VI, Inc. and

Edwin Correa, filed a First Amended Complaint in Virgin Islands Superior Court against

Arch Specialty Insurance Company of Texas ("Arch"), Zurich Insurance Company ("Zurich"),

Clarendon American Insurance Company ("Clarendon"), Deep South Surplus of Texas, L.P.

("Deep South"),[2] and CRC SCU f/k/a Crump Ins. Services, entitled *Codrington v. Arch*

*Specialty Ins. Co.,* Civ. No. 126/2019. Dkt. No. 1-2.  That complaint was removed to federal

court in May 2019 by CRC on the basis of diversity jurisdiction. Dkt. No. 1.

 Following removal, CRC filed a motion to dismiss or to transfer venue, Dkt. Nos. 4, 5.

Arch filed a motion to dismiss for failure to state a claim, Dkt. Nos. 26, 27 and Clarendon

filed a motion to dismiss for failure to state a claim, Dkt. Nos. 37, 38. In August 2019,

Codrington filed a Second Amended Complaint against Steadfast, Clarendon, Deep South,

and CRC.[3] Dkt. No. 40.

As alleged in the complaint, Codrington brought the instant action as assignee of the

rights of Crosstech VI, Inc., a resident corporation of the U.S. Virgin Islands; Tom Crossland,

---

[2] The Texas Secretary of State filed a Certificate of Termination concerning Deep South,
formerly a Texas Limited Partnership, in December 2014. Dkt. No. 1-4.
[3] This complaint was refiled at Dkt. No. 83.

a Texas resident and former president of Crosstech Boiler Services, LP, the parent organization of Crosstech VI; and Edward Correa. *Id.* ¶¶ 2, 8. Crosstech VI was formed in 2005 as a wholly owned subsidiary of Crosstech Boiler Services, the "front company" for work to be done by Crosstech Boiler Services at the Hovensa oil refinery on St. Croix, Virgin Islands. *Id.* ¶ 10. Crosstech VI's employees were loaned to Crosstech Boiler Services. *Id.* ¶ 11. The vehicles used in Crosstech VI's work were hired from Crosstech Boiler Services, and the insurance on those vehicles was provided by Crosstech Boiler Services' insurance policy from Clarendon. *Id.* ¶¶ 13, 15. There was a written agreement that Crosstech VI would be a named insured under Crosstech Boiler Services insurance policies, and the relationship between Crosstech VI and Crosstech Boiler Services was disclosed to all Defendants at the time Crosstech Boiler Services acquired the insurance. *Id.* ¶¶ 16, 17. Correa was a Crosstech VI employee—a loaned employee of Crosstech Boiler Services— and was provided with a Crosstech VI vehicle. *Id.* ¶ 19. Crosstech VI, Crossland, and Correa requested that the Defendants provide them with a liability policy to insure them against all liability claims arising from Crosstech VI business. *Id.* ¶ 33.

Codrington's rights as an assignee arose from a Superior Court lawsuit filed in 2007, entitled *Codrington v. Crosstech V.I. et al,* Superior Court Civil No. SX-07-278, in which he asserted entitlement to damages for negligence against Crosstech VI, Crossland, and Correa. *Id.* ¶ 8.[4] Crosstech VI, Crossland, and Correa tendered defense and indemnification

---

[4] The complaint does not explain what occurred, and when, that caused Crossland,

*Codrington v. Steadfast Insurance Co.*
1:19-cv-00026-MEM-EAH
Report & Recommendation
Page 4

of the claims to Steadfast and Clarendon, which denied the claims. *Id.* ¶¶ 9, 20. As a result of the denial, Crosstech VI, Crossland, and Correa could not afford counsel to defend the declaratory judgment action filed against them by the insurance companies and believed they would lose at trial and not be able to pay the verdict. *Id.* ¶ 31. They entered into a $5,000,000 consent judgment in favor of Codrington and assigned all claims they had against the insurance companies to him. The Superior Court entered the Consent Judgment in July 2018. *Id.* ¶ 21.

The instant complaint described CRC as an "insurance broker with its principle [sic] place of business in Texas which does business in the Virgin Islands." *Id.* ¶ 6. It cited a Steadfast general liability policy for the policy period January 11, 2007 to January 11, 2008, and a Clarendon business auto policy for the policy period December 19, 2006 to December 1, 2007, both of which required those Defendants to pay sums that Crosstech VI, Tom Crossland and Edward Correa may become legally obligated to pay for bodily injury arising out of an occurrence in the coverage territory, *id.* ¶¶ 22, 23. It further alleged that CRC underwrote the Steadfast policy as an agent of Steadfast. *Id.* ¶ 25. The complaint sought, inter alia, a declaration that the assignment to Codrington was valid and enforceable and that Defendants did not have a valid defense to enforcement of the assignment. *Id.* ¶ 39.

---

Crosstech VI, and Correa to seek indemnification. The June 2018 assignment of rights explained that Codrington was operating a motorcycle on March 4, 2007 on St. Croix, and got into an accident with a vehicle driven by Correa. Dkt. No. 158-10 ¶ 3.02.

Eventually, the Court granted Codrington's motion to amend the complaint, Dkt. No. 82, and Plaintiffs re-filed their Second Amended Complaint, Dkt. No. 83. Steadfast and Clarendon filed answers, Dkt. Nos. 84, 90, and CRC filed a motion to dismiss or transfer venue, Dkt. No. 89. In September 2021, the district court denied CRC's motion to dismiss without prejudice and granted limited jurisdictional discovery. Dkt. No. 123.

## II. Jurisdictional Discovery

The documentary and testimonial evidence adduced during jurisdictional discovery showed the following.

On October 27, 2006, Crosstech Boiler Services LP, listing a mailing and premises address in Richardson, Texas, filed an application with Champion Commercial Insurance ("Champion"), located in Dallas, Texas, seeking Commercial General Liability insurance for a January 11, 2007 through January 11, 2008 coverage period ($1 million per occurrence). Dkt. No. 158-5. The application indicated that Crosstech Boiler Services had no subsidiaries and was not engaged in joint ventures, did not lease employees to or from other employers, and had no labor exchanges with other businesses or subsidiaries; and that the additional interests to be insured were Vulcan Chemical in Louisiana and Arlington ISD in Texas. *Id.* at 1, 4, 5. A January 9, 2007 email from Champion, the insurance agent, to Crump Insurance Services ("Crump"), the broker, confirmed that Crosstech Boiler Services had only one location—in Richardson Texas. Dkt. No. 158-6 at 1. Zurich North America ("Zurich") issued the policy, effective from January 11, 2007 to January 11, 2008 (the "2007 Policy"). Dkt. No.

165-1. Crosstech Boiler Services was the named insured. *See, e.g.*, *id.* & p. 59; Dkt. No. 158-13 at 56, 61.

On March 4, 2007, Crosstech VI Supervisor, Edwin Correa, got into a car accident on St. Croix with Codrington while driving a Crosstech VI vehicle. Dkt. No.161-5 at 17, 24.

In a June 20, 2007 email, a Crump representative wrote to Zurich stating that Crosstech Boiler Services had submitted a name change request to Champion—to change the named insured to CRS V.I., Inc.—and that Crump was told "no change in operations, just a name change." Dkt. No. 158-8 at 1-4. No further amendments were sought. The name change went into effect on June 15, 2007, *id.* at 3, and was memorialized in a June 22, 2007 endorsement. Dkt. No. 158-9 at 1. The address of CRS V.I. on the policy was the same Texas address as that of Crosstech Boiler Services. *Id.*

In July 2007, a representative from Hovensa (an entity that was not described) sent Crossland an email stating that, "[l]ast year, our records show we spent over $9 million with Crosstech"; that Hovensa needed CRS V.I. to have commercial general liability insurance in the amount of $2 million per occurrence; and that Crossland should arrange that coverage with his insurance carrier. Dkt. No. 161-1 at 35. Crossland apparently contacted his agent, Champion, which in turn emailed Crump to ascertain if the increase was possible and the cost. *Id.* at 36. On January 8, 2008, Crossland filled out a Zurich general liability application, apparently to support its request for increased coverage. *Id.* at 37-44. On the line asking for "Name of Applicant," the form showed CRS VI Inc. on the first

line, with Crosstech V.I./Crosstech Boiler Service, Inc. in parenthesis on the second line. *Id*. at 37. Crossland attached a Crosstech VI Employee Orientation document, dated February 18, 2007, discussing safety practices at Hovensa but containing no identifying information about Hovensa. *Id*. at 45-58.

The record also contains endorsements from the Zurich policy, effective January 11, 2008 to January 11, 2009 (the "2008 Policy"). Dkt. No. 161-1 at 1-19. The named insured was CRS V.I., Inc., with the Richardson, Texas mailing address. *Id.*

CRC's Chief Operating Officer Neil Kessler submitted a Declaration in which he averred, on behalf of CRC, that: (1) CRC was organized under the laws of Alabama, where its principal place of business was located; (2) CRC acquired Crump in 2012, and it was merged into CRC in 2013; and (3) Crump had been organized under the laws of Texas with its principal place of business located there. Dkt. No. 158-1. Kessler further averred that, at no time material to the allegations in the complaint was CRC or Crump registered to conduct business in the Virgin Islands, nor did they own real or personal property, maintain a bank account, appoint an agent for service of process, advertise their services, enter into a contract, have an office, agents, sales representatives or employees, or solicit or conduct business in the Virgin Islands. *Id.*

Kessler was also deposed as CRC's Rule 30(b)(6) witness in both the *Alexander* and *Codrington*[5] cases. Dkt. No. 161-6. He testified that he had been employed by CRC since

---

[5] *Alexander v. Steadfast Ins. Co.*, Civ. No. 20-cv-00038 (D.V.I.), is a sister lawsuit to the

approximately 2010, *id.* at 10-11, and could only testify to Crump's practices as an insurance broker, given that CRC was also a broker that performed the same kinds of services, *id.* at 19, 31-32. CRC (and Crump), as wholesale insurance brokers, distributed insurance products to retail insurance agents, and did not deal directly with insureds. *Id.* at 13. Retail agents would be the ones soliciting insureds, and brokers solicited agents. *Id.* at 29. Clients submitted details of their insurance requirements and their applications to the retail insurance agents. *Id.* at 14. Crump had no role concerning an insured's policy after the policy had been underwritten and produced, except if the retail insurance agent requested some sort of change to the policy. *Id.* at 46.

Based on Kessler's review of the 2007 Policy, he was not aware that Crosstech Boiler Services or CRS V.I. ever tendered information that indicated they were primarily doing business in the U.S. Virgin Islands. *Id.* at 23. He stated that CRC did not restrict or refuse to conduct business with retail insurance agents who were obtaining coverage for potential insureds who primarily conducted business in U.S. Territories. *Id.* at 28. When asked if Crump acquired insurance policies on behalf of the retail insurance agent for Crosstech Boiler Services or CRS V.I., he responded that Crump acquired coverage through a retail agent for the entity indicated on the application. *Id.* at 34. He agreed that Crump procured insurance policies on behalf of its client, Champion, for the potential insured, CRS

---

instant lawsuit. The two lawsuits are not consolidated, but *Alexander* involves the same Defendants and issues (assignment of rights based on an automobile accident by a Crosstech, VI employee in April 2007). The Plaintiffs are different in the two lawsuits.

V.I., when CRS V.I. sought additional coverage per the January 8, 2008 application. *Id.* at 43. As to whether Crump had information in January 2008 (in relation to that application) that CRS V.I. was doing business in the Virgin Islands, Kessler responded that the information in the application and the email correspondence requesting additional coverage did not state it was in the Virgin Islands. *Id.* at 44-45.

Thomas Crossland was deposed on behalf of Crosstech VI as a Rule 30(b)(6) witness in *Codrington v. Crosstech V.I. Inc. and Edwin Correa*, SX-97-cv-278, a Superior Court case, in August 2008; Codrington provided the transcript in jurisdictional discovery. Dkt. No.161-5 at 12. Crossland testified that all the work for Crosstech VI was done on St. Croix until its contract expired in July 2007, and Crosstech Boiler Services did its work in Texas. *Id.* at 5-6, 8. The only reference to CRS V.I. in the deposition was Crossland's description of it as a Virgin Islands corporation with a "separate ownership structure" from Crosstech VI, although it performed similar work. *Id.* at 9-10. At the time of the deposition, CRS V.I. had a contract with Hovensa. *Id.* It is noteworthy that CRS V.I. is not mentioned in the complaint.

The bulk of the deposition focused on the March 2007 accident between Crosstech VI supervisor Edwin Correa and Codrington, which underlay the claims in the *Codrington v. Crosstech VI* Superior Court lawsuit. *Id.* at 10-.39, 52-61. A couple of weeks after the accident, he spoke with Correa, who told him that the motorcycle was speeding and when it passed his car, the driver's right knee, which had been sticking out, hit the bumper; a neighbor came out and said people had been drag racing the motorcycle; people took the

motorcycle away. *Id.* at 26-29. Correa as upset that he received a ticket for negligent driving because the police officer did not show up for a half- hour. *Id.* at 30.

Crossland also testified that a Crosstech Boiler Services policy issued by Clarendon covered vehicles used in Dallas but not on St. Croix. *Id.* at 42-43. He was shown a Zurich Commercial General Liability Policy declarations page, and responded that it did not apply to Crosstech VI. *Id.* at 47. In addition, he was asked whether he had a Commercial Liability Policy for St. Croix that covered Crosstech VI for the period in question. He had "determined that [the Zurich policy] did not cover [the lawsuit by Codrington]." *Id.* at 48. Crossland testified briefly about the Vega accident at issue in *Alexander*: it occurred on a weekend shortly after Correa's accident. *Id* at 52-53.

### III.    Arguments

In April 2022, following the conclusion of jurisdictional discovery, CRC renewed its motion to dismiss for lack of personal jurisdiction or to transfer venue to Texas. Dkt. Nos. 157, 158. It argued that CRC did not provide a service in the U.S. Virgin Islands or purposefully avail itself there, as Crump was a Texas corporation and, as a broker, did not deal directly with insureds or enter into contracts of insurance with anyone, anywhere; there was no evidence that Crump was informed that Crosstech Boiler Services had business operations in the Virgin Islands, given the email indicating that changing the name of the insured to CRS V.I., which occurred after the accident, represented only a name change and the only business location for the insured was in Texas; and nothing in the

*Codrington v. Steadfast Insurance Co.*
1:19-cv-00026-MEM-EAH
Report & Recommendation
Page 11

2006 application showed that the policy was underwritten to insure losses in the Virgin Islands. Dkt. No. 158. As a result, none of the provisions in the V.I. Long-Arm Statute, 5 V.I.C. § 4903, applied. *Id.* at 6-10. Because Codrington failed to establish personal jurisdiction under the Long-Arm Statute, a Due Process Clause analysis was irrelevant. Nevertheless, he did not establish the requisite minimum contacts to support this prong of the analysis either. *Id.* at 10-11. CRC also argued that the Court should dismiss the case for improper venue, as none of the venue options set forth in 28 U.S.C. § 1391(a) applied to the Virgin Islands. *Id.* at 12. And even if the Virgin Islands were deemed a proper venue, transfer to Texas was required for the convenience of the parties and witnesses and in the interest of justice under 28 U.S.C. § 1404(a). *Id.* at 12-18.

Codrington opposed the motion. Dkt. No. 161. He asserted that the Court must accept the allegations of the complaint as true, and he needed to establish only a prima facie case of personal jurisdiction. *Id.* at 5-6. Under that standard, he sufficiently pleaded personal jurisdiction (citing numerous paragraphs from the complaint) showing that his claims for relief arose from CRC transacting business in the Virgin Islands through its underwriting of insurance policies, contracting to supply services there, and contracting to insure persons, property or risks there. *Id.* at 10. He argued that Crossland, on behalf of Crosstech Boiler Services and "its additional insureds, including Crosstech VI and CRS VI, applied for insurance through Champion who in turn submitted that application to CRC, its wholesaler"; in the 2008 application, Crosstech Boiler Services "attached information

indicating that Crosstech was performing work at the Hovensa Refinery"; and CRC "accepted that information" and submitted the application for the coverage Crosstech requested "for the business they were engaged in in the USVI and Texas." *Id.* at 2-3. In addition, as of July 30, 2007, CRC received information that CRS V.I. earned $9 million with Hovensa in 2006. *Id.* at 4, 10-11.

Codrington further argued that CRC transacted business in the Virgin Islands when it contracted with the agent to find a liability policy to cover the business entities in Texas and the Virgin Islands under 5 V.I.C. § 4903(a)(1) and (2). *Id.* at 11. The Court also had jurisdiction under § 4903(a)(6) since it was CRC's sole purpose to procure insurance for the agent, and the agent requested coverage for the entities doing business in the Virgin Islands. *Id.* at 11-12. Exercising personal jurisdiction did not violate due process because the complaint pleaded specific jurisdiction, and CRC directed its activities at the Virgin Islands by choosing to do business there. *Id.* at 12-14. Codrington also contended that venue was proper in the VI and CRC failed to meet its burden to transfer the case to Texas because many of the factors weighed in favor of venue in the Virgin Islands. *Id.* at 15-21.

CRC filed a motion for an evidentiary hearing, asserting that, based on the written submissions following jurisdictional discovery, material facts were in dispute, including CRC's knowledge of Crosstech's operations when the relevant policy was procured. Dkt. No. 164 at 2. CRC indicated that Plaintiff responded that there was "enough evidence in the record to deny the motion and the expense of an evidentiary hearing is unnecessary." *Id.*

*Codrington v. Steadfast Insurance Co.*
1:19-cv-00026-MEM-EAH
Report & Recommendation
Page 13

CRC filed a reply that reiterated and expanded on its initial arguments. Dkt. No. 165.

After being assigned this case in September 2022, Dkt. No. 177, Judge Malachy E. Mannion referred the motion to dismiss to the undersigned for an R&R on February 7, 2023.[6] Dkt. No. 190.

## DISCUSSION

### I.    Legal Landscape for Personal Jurisdiction

### A.    Rule 12(b)(2) Motion

A plaintiff bears the burden of proving that jurisdiction is proper when a defendant challenges a court's exercise of personal jurisdiction under Fed. R. Civ. P. 12(b)(2). *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009). Once a Rule 12(b)(2) motion is made, however, and plaintiff's allegations are challenged by affidavits or other evidence, the "plaintiff must respond with actual proofs, not mere allegations." *Patterson by Patterson v. FBI*, 893 F.2d 595, 604 (3d Cir. 1990) (internal quotation marks omitted); *see also Metcalfe*, 566 F.3d at 330 ("'[O]nce a defendant has raised a jurisdictional defense,' the plaintiff must 'prov[e] by affidavits or other competent evidence that jurisdiction is proper.'") (quoting *Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1302 (3d Cir. 1996)). If a court does not hold an evidentiary hearing on the motion to dismiss, "the plaintiff need only establish a *prima facie* case of personal jurisdiction and the plaintiff is entitled to have

---

[6] In November 2022, CRC moved to stay discovery pending adjudication of its motion to dismiss, Dkt. Nos. 182, 183, which Plaintiffs opposed, Dkt. No 184. Defendant Steadfast joined CRC's motion, Dkt. No. 188, which Plaintiffs opposed, Dkt. No. 189. These motions are pending.

*Codrington v. Steadfast Insurance Co.*
1:19-cv-00026-MEM-EAH
Report & Recommendation
Page 14

its allegations taken as true and all factual disputes drawn in its favor." *Miller Yacht Sales, Inc. v. Smith,* 384 F.3d 93, 97 (3d Cir. 2004); *see also O'Connor v. Sandy Lane Hotel Co.,* 496 F.3d 312, 317 (3d Cir. 2007).

To make a *prima facie* showing, a plaintiff must "establish[] with reasonable particularity sufficient contacts between the defendant and the forum state," *Mellon Bank (East) PSFS, Nat. Ass'n v. Farino,* 960 F.2d 1217, 1223 (3d Cir. 1992), and cannot "rely on the bare pleadings alone in order to withstand a defendant's Rule 12(b)(2) motion to dismiss for lack of in personam jurisdiction." *Time Share Vacation Club v. Atl. Resorts, Ltd.,* 735 F.2d 61, 66 n. 9 (3d Cir.1984)); *see also United States v. Swiss Am. Bank, Ltd.,* 274 F.3d 610, 619 (1st Cir. 2001) ("The *prima facie* showing must be based upon evidence of specific facts set forth in the record . . . [and] go beyond the pleadings and make affirmative proof") (internal quotation marks omitted); *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.,* 288 F.3d 1264, 1269 (11th Cir. 2002) ("A *prima facie* case is established if the plaintiff presents enough evidence to withstand a motion for directed verdict") (internal quotations omitted).

### B. Personal Jurisdiction in the Virgin Islands

Courts generally follow a two-step analysis to determine if personal jurisdiction in the Virgin Islands is proper: (1) whether jurisdiction is authorized by the forum's long-arm statute and (2) whether the exercise of personal jurisdiction over the defendant would comport with due process under the United States Constitution, which requires that the defendants have certain minimum contacts with the forum. *Unlimited Holdings, Inc. v.*

*Bertram Yacht, Inc.,* 48 V.I. 941, 944 (D.V.I. 2007); *see also Fin. Trust Co. v. Citibank, N.A.,* 268

F. Supp. 2d 561, 566 (D.V.I. 2003).

### 1. Virgin Islands Long–Arm Statute

"A federal court may exercise personal jurisdiction "according to the law of the state

where it sits." *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 259 (3d Cir. 1998). The Long-Arm

Statute of the Virgin Islands, Title 5, section 4903 of the Virgin Islands Code, provides:

> (a) A court may exercise personal jurisdiction over a person, who acts directly or
> by an agent, as to a claim for relief arising from the person[ ]
>   (1) transacting any business in this territory;
>   (2) contracting to supply services or things in this territory;
>   (3) causing tortious injury by an act or omission in this territory;
>   (4) causing tortious injury in this territory by an act or omission outside this
>   territory if he regularly does or solicits business, or engages in any other
>   persistent course of conduct, or derives substantial revenue from goods used or
>   consumed or services rendered, in this territory;
>   (5) having an interest in, using, or possessing real property in this territory; or
>   (6) contracting to insure any person, property, or risk located within this
>   territory at the time of contracting.
>   (7) causing a woman to conceive a child, or conceiving or giving birth to a child;
>   or
>   (8) abandoning a minor in this Territory.

5 V.I.C. § 4903(a).

### 2. Due Process Requirements

Due process requires that a foreign defendant have minimum contacts with the

forum state in order for the Court to exercise personal jurisdiction over that defendant.

*Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474 (1985). Under this standard, "jurisdiction

is proper if the defendant has taken 'action . . . purposefully directed toward the forum

Codrington v. Steadfast Insurance Co.
1:19-cv-00026-MEM-EAH
Report & Recommendation
Page 16

State.'" *Pinker v. Roche Holdings, Ltd.,* 292 F.3d 361, 370 (3d Cir. 2002) (quoting *Asahi Metal*

*Indus. Co., 1009 Ltd. v. Super. Ct. of Cal.,* 480 U.S. 102, 112 (1987)).

## II.    ANALYSIS

Because CRC has raised a jurisdictional defense, Codrington bears the burden of

establishing this Court's personal jurisdiction over CRC. *See Dayhoff,* 86 F.3d at 1302. CRC

was named as a Defendant because it was formerly known as Crump Ins. Services, the

broker that procured the Zurich general liability policy for the period January 11, 2007 to

January 11, 2008 which, Codrington alleged, required Steadfast to pay sums under the

policy that it became legally obligated to pay for bodily injury arising out of an occurrence

in the coverage territory. Dkt. No. 83 ¶¶ 22, 25. The occurrence was the April 2007

automobile accident involving Correa, a Crosstech, VI supervisor. Dkt. No. 161-5 at 24. The

facts elicited from discovery that Codrington cites to support personal jurisdiction over

CRC under 5 V.I.C. §§ 4903(a)(1), (2) and (6) fail to do so.

### A. The Long-Arm Statute

#### 1.  5 V.I.C. § 4903(a)(1) – Transacting Business

Section (a)(1) applies to entities "transacting business" in the Territory. *See* 5 V.I.C. §

4903(a)(1). "Transacting business is a term of art which means less than doing business

but more than performing some inconsequential act within a jurisdiction. . . . [T]ransacting

business requires a defendant to engage in some type of purposeful activity within the

territory." *Hendrickson v. Reg O Co.,* 17 V.I. 457, 462–63 (D.V.I. 1980) *aff'd,* 657 F.2d 9 (3d

*Codrington v. Steadfast Insurance Co.*
1:19-cv-00026-MEM-EAH
Report & Recommendation
Page 17

Cir. 1981); *see also Fin. Trust Co.,* 268 F. Supp. 2d at 567 (noting that, under subsection (a)(1), transacting any business could be satisfied by a single act that amounted to transacting business in the Territory, and finding it sufficient that the defendant entered into a contract with a Virgin Islands resident and solicited the plaintiffs while they were in the Virgin Islands); *Paradise Motors, Inc. v. Toyota de Puerto Rico, Corp.,* 314 F. Supp. 2d 495, 498 & n. 4 (D.V.I. 2004) (ruling that participation in some business dealings with the Virgin Islands along with receipt of substantial revenue qualified as transacting business).

The evidence shows unequivocally that CRC did not transact business in the Virgin Islands, much less engage in some sort of "purposeful activity" there. The Declaration of Neil Kessler, CRC's Chief Operating Officer, Dkt. No. 158-2, supported by his deposition testimony, Dkt. No. 161-6, indicated that both CRC and Crump (prior to its acquisition by CRC in 2012) were wholesale insurance brokers that did not deal directly with insureds. Dkt. Nos. 158-1; 161-6 at 13. And the insured at the time of the accident was Crosstech Boiler Services, a Texas corporation with an address and premises location in Richardson, Texas. Dkt. No. 165-1. Crosstech Boiler Services submitted an application to *Champion*, a Texas LLC that served as the retail agent for the insurance policy, in August 2006. Dkt. 158-5. It was *Champion*, not Crossland or Crosstech Boiler Services, that submitted the application to Crump. Dkt. No. 161-6 at 18. In other words, Crump did not deal with Crossland or Crosstech Boiler directly so as to transact their business, much less CRS V.I. or Crosstech VI.

*Codrington v. Steadfast Insurance Co.*
1:19-cv-00026-MEM-EAH
Report & Recommendation
Page 18

Moreover, Kessler averred that, at no time material to the allegations in the complaint was CRC or Crump registered to conduct business in the Virgin Islands. Dkt. No. 158-1. Neither entity owned real or personal property, maintained a bank account, appointed an agent for service of process, advertised their services, entered into a contract, had an office, agents, sales representatives or employees, or solicited or conducted business in the Virgin Islands. *Id.* Codrington provided no evidence to challenge that sworn statement that would subject CRC to jurisdiction under 5 V.I.C. § 4903(a)(1). *See Kressen*, 122 F. Supp. 2d at 585 (ruling that a similar affidavit showed that the defendant did not transact business in the Virgin Islands, contract to supply services to the territory, or contract to insure any person, property, or risk anywhere because the firm was an insurance agent not a company, and did not carry out its insurance agent activities in the territory).

Codrington claims that the 2007 Policy's coverage territory, defined as the "United States of America (including its territories and possessions)," Dkt. No. 161-4, proved that it transacted business in the Virgin Islands. Dkt. No. 161 at 11. This provision is irrelevant because it applies to *Zurich's* policy, not to CRC—which was not the insurer—and could not and did not change the fact that the 2007 Policy's insured was Crosstech Boiler Services, in Texas (later CRS V.I., also in Texas); that the Policy was entered into with that understanding, based on the 2006 application; and any occurrence to be indemnified would have to relate to Crosstech Boiler Services.

### 2. 5 V.I.C. § 4903(a)(2) – Contracting to Supply Services in the Territory

To fall within 5 V.I.C. § 4903(a)(2), "all that is required by a literal interpretation of the statutory language is that the contract be performed in the Virgin Islands and that the cause of action arise out of the contract." *Godfrey v. Int'l Moving Consultants, Inc.,* 18 V.I. 60, 68 (D.V.I. 1980). "When a defendant is aware that the Virgin Islands is the ultimate destination of the goods it is supplying, the contract is said to be performed (at least in part) in the Virgin Islands." *Metcalfe,* 566 F.3d at 332 (citing, inter alia, *Four Winds Plaza Corp. v. Caribbean Fire & Assocs.,* 48 V.I. 899, 910 (D.V.I. 2007) (finding the defendant "was fully aware that the ultimate destination for the equipment was the Virgin Islands" because of indications in a sales proposal and payment check that the goods would be delivered in St. Thomas)).

Nothing in the 2007 Policy—in effect at the time of Correa's March 4, 2007 automobile accident—indicated that it was going to be performed or would be insuring anything or anyone in the Virgin Islands. In order to obtain the policy, Crosstech Boiler Services filled out an application in October 2006 (submitted to Champion, also in Texas) indicating that its address and premises were in Richardson, Texas; it had no subsidiaries and was not engaged in joint ventures; did not lease employees to or from other employers, and had no labor exchanges with other businesses or subsidiaries[7]; and that the additional

---

[7] This evidence directly contradicts the allegations in the complaint that Crosstech, VI was a wholly owned subsidiary of Crosstech Boiler Services, and Crosstech VI's employees were loaned to Crosstech Boiler Services. Dkt. No. 83 ¶¶ 10, 11.

interests to be insured were Vulcan Chemical in Louisiana and Arlington ISD in Texas. Dkt. No. 158-5 at 1, 4, 5. A January 9, 2007 email from Champion to Crump confirmed that Crosstech Boiler Services had only one location—in Richardson Texas. Dkt. No. 158-6 at 1. The policy went into effect on January 11, 2007 based on the representations in that application. Needless to say, Crosstech, VI was not mentioned in the application at all.

In June 2007, *after the Correa accident*, Crosstech Boiler Services requested an amendment to the policy to change the name of the insured to CRS V.I. Dkt. No. 158-8. This was solely a name change: the address of the insured, CRS V.I., remained Richardson, Texas, and no additional amendments covering any additional persons, items, or entities in the Virgin Islands or elsewhere were requested. *Id.* & 158-9. Kessler, CRC's executive, testified that, based on his review, he was not aware that Crosstech Boiler Services or CRS V.I. ever tendered information that indicated they were primarily doing business in the U.S. Virgin Islands. Dkt. No. 161-6 at 23. Crossland testified that Crosstech Boiler Services did its work in Texas, Dkt. No. 161-5 at 5-6, and that the Zurich Commercial General Liability Policy did not apply to Crosstech VI or Correa's March 2007 automobile accident *id.* at 47-49.

Codrington cites irrelevant facts and makes arguments that rely on ambiguity in an attempt to show that CRC knew that the policy insured persons and property in the Virgin Islands. For example, he contends that, in order to obtain insurance that would "cover *his business entities*. Crossland submitted information on *applications for insurance* evidencing their safety program in the Virgin Islands and that they had earned over nine (9) million

dollars in the Virgin Islands in 2006." Dkt. No. 161 at 1 (emphasis added). By using the ambiguous phrase "Crossland's business entities," Codrington attempts to obscure the fact that the only entity covered under the 2007 Policy at the time of the accident was Crosstech Boiler Services—not Crosstech VI that had employed Correa—as if the various "Crossland business entities" could be easily substituted for each other. Codrington also lumps the 2006 and 2008 insurance applications together in an effort to erase any distinction between them, so that the references to Crosstech VI and Hovensa in the 2008 application could be imparted to the 2006 application to show it insured a business in the Virgin Islands. But the 2008 application and its attachments (and the July 2007 emails leading up to that application), have no relevance to the 2006 application and 2007 Policy, the only policy at issue. *Cf. Jacobs*, 2020 WL 5579825, at *4 (post-incident communications with defendant, long after injury occurred, do not support personal jurisdiction); *see* Dkt. No. 83 ¶ 22 (referring to the 2007 Policy at issue). In sum, the 2007 Policy did not provide any insurance services in the Virgin Islands. Accordingly, because there was no evidence to show that CRC/Crump "knew" the 2007 Policy provided insurance services in the Virgin Islands, 5 V.I.C. § 4903(a)(2) does not confer personal jurisdiction over CRC.

### 3. 5 V.I.C. § 4903(a)(6) – Insuring in the Virgin Islands

This provision of the Long Arm Statute establishes personal jurisdiction if the claim arises from contracting to insure persons, property or risk in the Virgin Islands "at the time of contracting." 5 V.I.C. § 4906(a)(6). For all of the reasons set forth above, this provision

does not apply, as nothing in the 2007 Policy, *at the time of contracting* in January 2007, insured any person, property or risk in the Virgin Islands.

### 4. Conclusion

Codrington did not provide any affidavits that the Court could construe as true to support his personal jurisdiction argument. Rather, the evidence consisted of documents and deposition testimony, which showed no disputed facts that the Court would be required to construe in his favor. Codrington's contention that CRC/Crump knew that Crosstech Boiler Services had operations in the Virgin Islands when the 2007 Policy was procured is simply unsupported argument. *Metcalfe*, 566 F.3d at 1230. He did not meet his burden of establishing a prima facie case of jurisdiction by showing sufficient contacts between CRC/Crump and the Virgin Islands, *Farino,* 960 F.2d at 1223.

### B. Due Process

Codrington contends that the complaint adequately pleads a prima facie case of specific jurisdiction over CRC, and the evidence obtained during jurisdictional discovery also supports such a finding. Dkt. No. 161 at 12. In particular, he asserts that CRC "purposefully directed its activities at the U.S. Virgin Islands by choosing to do business [there] and to procure policies for retail insurance agents to ensure losses [there]." *Id.* Further, at the time of the "submissions of applications for acquiring the insurance policies, CRC was aware of the relationship between Crosstech Boiler Services LP and its wholly owned subsidiary Crosstech VI, Inc. and CRS VI." *Id.* at 13.

Specific jurisdiction exists if the defendant has "purposefully directed its activities at the forum" and whether the litigation "ar[o]se out of or relate[d] to" those activities. *O'Connor*, 496 F.3d at 317 (internal quotation marks and alterations omitted). If those two requirements are met, a court may consider "whether the exercise of jurisdiction otherwise comports with fair play and substantial justice." *Id.* (internal quotation marks and alteration omitted). The Court's conclusion that there is no statutory basis for exercising jurisdiction over CRC in accordance with the Virgin Islands Long-Arm statute is sufficient to find that personal jurisdiction does not exist over CRC, without having to examine whether due process exists. *Kressen*, 122 F. Supp. 2d at 586. But even if the Court were to consider the due process personal jurisdiction prong, the analysis above establishes that CRC did not "purposefully direct" its activities to the Virgin Islands. It directed its activities to its Texas agent, Champion, and to the insurance underwriter, Zurich, but not to the insured, Crosstech Boiler Services (or even CRS V.I.). Having failed to meet the first prong of the due process test, the Court need not address the second and third prongs as the showing on the first prong is sufficient to defeat personal jurisdiction based on due process.

**C. Improper Venue, Transfer Venue**

Because the Court concludes that Plaintiffs have not established personal jurisdiction over CRC/Crump, it need not reach CRC's alternative argument that the case should be dismissed based on improper venue, or else transferred to the appropriate district court in Texas. Dkt. No. 158 at 12-18.

*Codrington v. Steadfast Insurance Co.*
1:19-cv-00026-MEM-EAH
Report & Recommendation
Page 24

## CONCLUSION

Accordingly, the Court **RECOMMENDS** that the Defendant CRC's Renewed Motion to Dismiss for Lack of Personal Jurisdiction, Dkt. No. 157, be **GRANTED**.

Any objections to this Report and Recommendation must be filed in writing within fourteen (14) days of receipt of this notice, 28 U.S.C. § 636(b)(1), and must "specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis of such objection." LRCi 72.3. Failure to file objections within the specified time shall bar the aggrieved party from attacking such Report and Recommendation before the assigned District Court Judge. *See, e.g., Thomas v. Arn*, 474 U.S. 140 (1985).

ENTER:

Dated: February 28, 2023

/s/ Emile A. Henderson III
EMILE A. HENDERSON III
U.S. MAGISTRATE JUDGE

## DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. CROIX

| | | |
|---|---|---|
| **JAMES CODRINGTON,** | : | |
| *as Assignee of the rights of* | | |
| *Crosstech VI, Inc.,* | : | |
| | | |
| **Plaintiff** | : | **CIVIL ACTION NO. 1:19-26** |
| | | |
| **v.** | : | **(MANNION, D.J.)** |
| | | **(HENDERSON, M.J.)** |
| **DEEP SOUTH SURPLUS OF TEXAS,** | : | |
| *et al.,* | | |
| | : | |
| **Defendants** | | |
| | : | |

## <u>O R D E R</u>

In accordance with the memorandum issued this same day, **IT IS HEREBY ORDERED THAT:**

**(1)** The plaintiff's objections to the report and recommendation of Judge Henderson **(Doc. 194)** are **OVERRULED**.

**(2)** The report and recommendation of Judge Henderson **(Doc. 191)** is **ADOPTED IN ITS ENTIRETY** as the decision of the court.

**(3)** Defendant CRC's renewed motion to dismiss for lack of personal jurisdiction **(Doc. 157)** is **GRANTED.**

**(4)** CRC is hereby **DISMISSED** from this action.



**EXHIBIT 2**

**(5)** The instant action is **REMANDED** to Judge Henderson for all

further pre-trial matters.

*s/ Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATED: March 31, 2023**
19-26-01-ORDER

- 2 -

| DISTRICT COURT OF THE VIRGIN ISLANDS |
|---|
| DIVISION OF ST. CROIX |

JAMES CODRINGTON, as Assignee
of the rights of Crosstech VI, Inc.,

        **Plaintiff,**

    **v.**

STEADFAST INSURANCE CO.,
DEEP SOUTH SURPLUS OF TEXAS,

        **Defendants.**

    **1:19-cv-00026-MEM-EAH**

TO:   **Lee J. Rohn, Esq.**
      **Jennifer Sue Koockogey, Esq.**
         *For Plaintiffs*
      **Mark Wilczynski, Esq.**
         *For Steadfast Ins. Co.*

## **REPORT AND RECOMMENDATION**

    **THIS MATTER** comes before the Court on an Order referring all pending dispositive matters in this case to the undersigned for a Report and Recommendation ("R&R"). Dkt. No. 190. In this R&R, the Court addresses the pending Motion for Summary Judgment, filed by Defendant Steadfast Insurance Company ("Steadfast"), Dkt. No. 112, which the District Court stayed in order that the parties could conduct discovery under Fed. R. Civ. P. 56(d) concerning whether the claims of Plaintiff James Codrington were time-barred. Dkt. No. 122. That Order permitted each party to submit a supplemental memorandum following completion of that limited discovery. Each party filed a memorandum. Dkt. Nos. 153, 155. For the reasons stated below, this Court recommends that Steadfast's Motion for Summary Judgment be granted.

**EXHIBIT**

**3**

## BACKGROUND

### I.    The Complaint

In April 2019, James Codrington, as Assignee of the rights of Crosstech VI, Inc. and

Edwin Correa, filed a First Amended Complaint in the Superior Court of the Virgin Islands

against Arch Specialty Insurance Company of Texas ("Arch"), Zurich Insurance Company

("Zurich"),[1] Clarendon American Insurance Company ("Clarendon"), Deep South Surplus of

Texas, L.P. ("Deep South"),[2] and CRC SCU f/k/a Crump Ins. Services, entitled *Codrington v.*

*Arch Specialty Ins. Co.,* Civ. No. 126/2019. Dkt. No. 1-2. Defendant CRC removed the complaint

to federal court in May 2019 on the basis of diversity jurisdiction. Dkt. No. 1.

Motion practice ensued. In August 2019, Codrington filed a Second Amended

Complaint against Steadfast, Clarendon, Deep South, and CRC.[3] Dkt. No. 40. As alleged in the

complaint, Codrington brought the instant action as assignee of the rights of Crosstech VI,

Inc., a resident corporation of the U.S. Virgin Islands; Tom Crossland, a Texas resident and

former president of Crosstech Boiler Services, LP, the parent organization of Crosstech VI;

and Edward Correa.[4] *Id.* ¶¶ 2, 8. Crosstech VI was formed in 2005 as a wholly owned

subsidiary of Crosstech Boiler Services, the "front company" for work to be done by

---

[1] The Complaint described Defendant Zurich Insurance Company as "Zurich Insurance Company-Steadfast Insurance Company ("Zurich")." Dkt. No. 1-2 ¶ 4.

[2] The Texas Secretary of State filed a Certificate of Termination concerning Deep South, formerly a Texas Limited Partnership, in December 2014. Dkt. No. 1-4. Deep South was never served and has never appeared in this case.

[3] This complaint was refiled at Dkt. No. 83.

[4] This complaint added Tom Crossland as being one of the assignors of rights.

Crosstech Boiler Services at the HOVENSA oil refinery on St. Croix, Virgin Islands. *Id.* ¶ 10. The vehicles used in Crosstech VI's work were hired from Crosstech Boiler Services, and the insurance on those vehicles was provided by Crosstech Boiler Services' insurance policy from Clarendon. *Id.* ¶¶ 13, 15. There was a written agreement that Crosstech VI would be a named insured under Crosstech Boiler Services insurance policies, and the relationship between Crosstech VI and Crosstech Boiler Services was disclosed to all Defendants when Crosstech Boiler Services acquired the insurance. *Id.* ¶¶ 16, 17. Correa was a Crosstech VI employee and was provided with a Crosstech VI vehicle. *Id.* ¶ 19. Crosstech VI, Crossland, and Correa requested that all Defendants provide them with a policy to insure them against all liability claims arising from Crosstech VI business. *Id.* ¶ 33.

Codrington's rights as an assignee arose from an underlying Superior Court lawsuit filed in 2007, entitled *Codrington v. Crosstech V.I. et al,* Superior Court Civil No. SX-07-278, in which he claimed damages for negligence against Crosstech VI, Crossland, and Correa. *Id.* ¶ 8. These three entities tendered defense and indemnification of Codrington's claims to Steadfast and Clarendon, which denied the claims.[5] *Id.* ¶¶ 9, 20. As a result of the denial, the three entities could not afford counsel to defend the declaratory judgment action filed against them by the insurance companies and believed they would lose at trial and not be

---

[5] The complaint does not explain what occurred, and when, that caused Crossland, Crosstech VI, and Correa to seek indemnification. The June 2018 assignment of rights explained that Codrington was operating a motorcycle on March 4, 2007 on St. Croix, and got into an accident with a vehicle driven by Correa, a Crosstech VI employee. Dkt. No. 1-3 ¶ 3.02.

*Codrington v. Steadfast Insurance Co.*
1:19-cv-00026-MEM-EAH
Report & Recommendation
Page 4

able to pay the verdict. *Id.* ¶ 31. They entered into a $5,000,000 consent judgment in favor of Codrington and assigned all claims they had against the insurance companies to him. The Superior Court entered the Consent Judgment in July 2018.[6] *Id.* ¶ 21.

The complaint cited a Steadfast general liability policy for the period January 11, 2007 to January 11, 2008, and a Clarendon business auto policy for December 19, 2006 to December 1, 2007, both of which allegedly required those companies to pay sums that Crosstech VI, Tom Crossland, and Edward Correa became legally obligated to pay for bodily injury arising out of an occurrence in the coverage territory, *id.* ¶¶ 22, 23. The complaint sought, inter alia, a declaration that the assignment to Codrington was valid and enforceable and that Defendants did not have a valid defense to enforcement of the assignment. *Id.* ¶ 39. It asserted claims against Steadfast (and Clarendon) under 22 V.I.C. § 2 for violating the duty of good faith and fair dealing; for negligent and/or intentional misrepresentation; and for fraudulent conduct. *Id.* at 8-9, 14-15.

Steadfast filed an answer, Dkt. No. 84, and CRC filed a motion to dismiss or transfer venue, Dkt. No. 89. Clarendon then filed a (renewed) motion for summary judgment, Dkt. Nos. 93-95, and Codrington filed a (renewed) motion to stay the motion for summary judgment pending completion of discovery, Dkt. No. 99.

---

[6] The Consent Judgment indicates that only Crosstech VI and Correa were subject to its terms, and the Assignment and Agreement not to Execute also indicated that only Crosstech, VI and Correa were subject to its terms. Dkt. No. 1-3 at 16-29.

## II.    Steadfast's Motion for Summary Judgment

In July 2021, Steadfast moved for summary judgment.[7] Dkt. No. 112. It argued that Codrington's causes of action ran afoul of the statute of limitations, the 2018 assignment could not confer standing on Codrington because the statute of limitations had run on the underlying cause of action, and no discovery was required since the traffic accident underlying the claim was excluded by the Steadfast policy. *Id.*

Steadfast, relying for the most part on the Affidavit of Rick Dudek, a Steadfast Assistant Vice President of Complex Claims, Dkt. No. 112-3, asserted the following material facts. Steadfast was an insurance business operating as a member of Zurich Insurance Group. Dkt. No. 112-2 (Statement of Material Facts) ¶ 1, Dkt. No. 112-3 (Dudek Aff.), ¶ 3. In January 2007, Crosstech Boiler Services LP of Richardson, Texas, purchased a Steadfast Commercial General Liability Policy from Crump Insurance Services of Texas, with a coverage period of January 11, 2007 to January 11, 2008. Dkt. No. 112-2 ¶ 2, 112-3 ¶ 9, 112-3 at 6-56. In May 2007, Codrington filed a lawsuit in Superior Court against Crosstech VI Inc. and Edwin Correa concerning a March 4, 2007 traffic accident between Codrington's motorcycle and a pickup truck owned by Crosstech VI and operated by its employee, Correa. Dkt. No. 112-2 ¶¶ 3, 4. Correa acted negligently by disobeying a stop sign and since he was allegedly acting in the

---

[7] Steadfast did not file a motion for summary judgment in *Alexander v. Steadfast*, 1:20-cv-0038 (D.V.I.), a case that has been consolidated with *Codrington* for discovery purposes.

scope of his employment, Crosstech VI was liable based on respondeat superior. Dkt. No. 112-2 ¶¶ 5, 6.

On August 23, 2010, Steadfast received correspondence from Douglas Capdeville, Esq. who sought defense and indemnity for his client, Crosstech VI (an affiliated company of Crosstech Boiler Services) under the Steadfast policy—the first notice Steadfast had received of the March 2007 accident and possible liability. Dkt. No. 112-2 ¶¶ 7, 8; Dkt. No. 112-3 ¶¶ 10-12, pp. 58-60. Capdeville's letter conceded that the vehicle was insured at the time of the accident under a different policy, issued by Underwriters of Lloyds (attached at Dkt. No. 112-3 at 65) and that tendering this claim under the Steadfast liability policy was the idea of Codrington's attorney who believed that because Codrington was proceeding under a respondeat superior theory, the commercial general liability policy and not the automobile policy applied. Dkt. No. 112-2 ¶¶ 9-11, Dkt. No. 112-3 ¶¶ 13-15 and p. 67. That day, Steadfast generated a General Liability Notice of Occurrence/Claim, as standard practice, Dkt. No. 112-3 at p. 69-71, and acknowledged receipt of the claim, Dkt. No. 112-3 at p. 73. A Steadfast team manager sent a letter to the insured stating that a Zurich senior claims specialist, Paul Valle, would handle the coverage question under the Steadfast policy. Dkt. No. 112-2 ¶¶ 12-14, Dkt. No. 112-3 ¶¶ 16-18, and p. 75. The next day (August 24), Mr. Valle informed the Steadfast team manager of disclaimer of coverage. Dkt. No. 112-2 ¶ 15, Dkt. No. 112-3 ¶ 19 and p. 78.

*Codrington v. Steadfast Insurance Co.*
1:19-cv-00026-MEM-EAH
Report & Recommendation
Page 7

In a letter dated September 7, 2010, Mr. Valle informed Attorney Capdeville of the disclaimer of coverage, quoting the relevant section of the policy (Section I(2)(g)[8]) that excluded coverage for bodily injury or property damage arising out of the use of any auto owned or operated by any insured. Dkt. No. 112-2 ¶ 16, Dkt. No. 112-3 ¶ 20 and pp. 80-82. Attorney Capdeville agreed, but had wanted to send in the claim to receive a formal decision. Dkt. No. 112-3 at p. 84. Neither Steadfast nor Zurich received any other information concerning the September 2010 denial of coverage until they received service of process in the instant action in May 2019. Dkt. No. 112-2 ¶ 18, Dkt. No. 112-3 ¶ 22.

The assignment from Crosstech VI and Correa to Codrington in June 2018, included "extra-contractual or bad faith claims" and any claims against Steadfast arising from its failure to fulfill its good faith obligations and protect Crosstech VI and Correa from liability to Codrington. Dkt. No. 112-2 ¶¶ 19-20; Dkt. No. 71-9. Both Steadfast's and Zurich's practice was to document any material representations to an insured, and there were no such representations outside of the policy documents. Dkt. No. 112-2 ¶ 25, Dkt. No. 112-3 ¶ 23.

---

[8] The Exclusions section of the policy, Section 1(2)(g), provided that bodily injury or property damage arising out of the ownership, use, or entrustment to others of any auto was excluded. Dkt. No. 112-3 at 12. Steadfast's Statement of Material Facts cited other provisions of the policy, Dkt. No. 112 at 5-10, which described Duties in the Event of Occurrence (prompt notification of claims), § IV(2); Legal Action Against Us, describing that no person had a right under the policy to join Steadfast unless all policy terms had been complied with, § IV(3); and Transfer of Your Rights and Duties Under This Policy provided that the insured's rights and duties could not be transferred without Steadfast's written consent except in the case of the death of a Named Insured, § IV(13).

Codrington v. Steadfast Insurance Co.
1:19-cv-00026-MEM-EAH
Report & Recommendation
Page 8

In its memorandum, Steadfast argued that the two-year statute of limitations for the negligent/intentional misrepresentation and fraudulent conduct claims applied. Dkt. No. 112-1 at 6-7. While Virgin Islands courts have applied a two-year tort statute of limitations for bad faith breach of the duty of good faith and fair dealing, even if the six-year limitations period for breach of contract applied, that period ran as well before the case was filed. *Id.* at 7. The operative facts giving rise to the claims accrued no later than the September 7, 2010 denial of coverage, which put the insured on notice that he must make a timely claim or risk loss on the claim.[9] *Id.* All that occurred after that date was the continuation of the litigation in Superior Court that concluded with the June 2018 consent judgment.

_____

[9] Steadfast analyzed the elements in insurance bad faith claims, set out in *Justin v. Guardian Ins. Co.*, 670 F. Supp. 614, 617 (D.V.I. 1987), to establish when the essential acts occurred for each element. Dkt. No. 112 at 8-11. The date for the existence of the insurance contract was before the September 7, 2010 denial of coverage; the intentional refusal to pay the claim was on September 7, 2010; the nonexistence of any legitimate reason for the denial and the insurer's knowledge of no legitimate reason for the denial could not have occurred after September 7, 2010; evidence of the insurer's failure to investigate is not applicable but could be no later than the date coverage was denied. *Id.* at 9. If either Steadfast or Zurich did wrong to its insured, that wrong occurred no later than September 7, 2010. *Id.* Determining trigger dates for a bad faith claim is simple in denial of coverage cases: the date the defendant insurance company first denied the insured's claim in bad faith, citing *Simon Wrecking Co. v. AIU Ins. Co.*, 350 F. Supp. 2d 624, 631-32 (E.D. Pa. 2004). *Id.* at 10.

Similarly, whatever misrepresentations may have occurred or whatever fraudulent conduct was perpetrated by Steadfast necessarily occurred and was known by September 7, 2010, when coverage was denied. *Id.* No grounds supported the position that the claim existed in June 2018 when the consent judgment was agreed to, or that the statute of limitations had not run by March 2019 when the instant action was filed in the Superior Court. The statute of limitations ran in 2012. Even if Steadfast applied the six-year statute of limitations for breach of contract, it would have run in September 2016, long before the lawsuit was initiated. *Id.* at 11.

*Codrington v. Steadfast Insurance Co.*
1:19-cv-00026-MEM-EAH
Report & Recommendation
Page 9

Second, Codrington did not have standing to sue because he could not demonstrate that his asserted injury would be redressed by a favorable decision, citing cases finding no standing where the limitations period had run on a claim prior to assignment. *Id*. at 11-12.

Third, Steadfast pointed to Mr. Valle's notation that Attorney Capdeville agreed with the disclaimer but just wanted a formal decision from Steadfast. *Id*. at 12. While this was not determinative, the policy expressly excluded bodily injury or property damage arising out of the use of automobiles, which was specifically cited by Mr. Valle as the reason for declining coverage. *Id.* at 13. Courts look to the express terms of the agreement to determine the parties' intent. *Id*. Crosstech VI had paid for a separate business automobile policy that covered operation of its vehicles, including the truck involved in the collision. *Id*. at 14.

In opposition, Codrington moved under Fed. R. Civ. P. 56(d) to stay the motion for summary judgment pending completion of discovery, as no discovery had yet taken place.[10] Dkt. No. 115. The memorandum in large part concerned Codrington's position that he was entitled to discovery on his claims in order to support his position that genuine disputes of material fact existed to preclude summary judgment. For example, because no discovery had taken place, he could not establish that Crosstech VI and Correa were insureds under an applicable policy, and that the contract extended to auto accident claims under respondeat superior. *Id*. at 8. He also sought to ascertain Steadfast's knowledge regarding the inaccuracy

---

[10] Consequently, it did not file a Statement of Material Facts or a Response to Steadfast's Statement of Material Facts.

of information supplied to Crossland and Crosstech VI concerning Steadfast's policy coverage, *id.* at 12, and his claim that Steadfast acted fraudulently by falsely asserting to Crossland and Crosstech VI that there was no coverage under the policy, *id.* at 14. The memorandum mentioned Steadfast's statute of limitations argument only in passing. *Id.* at 4. Attached to the motion was an affirmation by Codrington's attorney attesting to the procedural posture of the case and the information Plaintiff would seek in discovery. Dkt. No. 115-1. Steadfast opposed the motion staying summary judgment. Dkt. No. 116.

In September 2021, District Judge Anne E. Thompson issued an Order in which she noted that, although it appeared that Codrington's claims were time-barred, the information he requested might preclude the entry of summary judgment. Dkt. No. 122 at 2. Judge Thompson therefore granted Codrington's motions to stay both Clarendon's and Steadfast's pending motions for summary judgment, ordered the parties to exchange limited discovery for the purpose of establishing whether Codrington's claims were time-barred, and to submit supplemental memoranda within 45 days of the Order. *Id.* at 2-3. The Court later granted a motion to extend the deadline, Dkt. No. 152.

In January 2023, Steadfast filed its memorandum in support of its motion for summary judgment.[11] Dkt. No. 153. It asserted that, following the exchange of written discovery and having conducted depositions of relevant witnesses, Plaintiff's claims violated

---

[11] In February 2023, the parties stipulated to the dismissal of Clarendon from the lawsuit. Dkt. Nos. 154, 156.

*Codrington v. Steadfast Insurance Co.*
1:19-cv-00026-MEM-EAH
Report & Recommendation
Page 11

the statute of limitations; it asked the Court to grant the relief sought in its motion for summary judgment. *Id.* at 1. Steadfast cited Virgin Islands case law that a two-year statute of limitations applied to the three claims asserted against it: misrepresentation and fraud; negligent misrepresentation, bad faith; insurance bad faith claims and breach of the duty of good faith and fair dealing. *Id.* at 2. Steadfast denied coverage on September 7, 2010, and the insured was aware of the denial at that time. A bad faith claim would have to have been filed by September 7, 2012. No viable cause of action existed on June 21, 2018 when the assignment and consent judgment were agreed to between Codrington, Crosstech VI and Correa or when Plaintiff filed his complaint. *Id.* No evidence has shown otherwise. *Id.*

Further, while Plaintiff suggested that the statute of limitations may have been tolled under the continuing violations doctrine, the Virgin Islands Supreme Court, in *Anthony v. FirstBank Virgin Islands*, 58 V.I. 224, 227 (V.I. 2013), held otherwise. Anthony's property had been damaged in Hurricane Marilyn, and FirstBank had sought to foreclose. Anthony counterclaimed, arguing that FirstBank breached its contractual duty to insure the property and that the continuing violations doctrine tolled the statute of limitations. On summary judgment, the Superior Court dismissed the counterclaims, given that they had been filed in 2007, twelve years after FirstBank's alleged breaches in 1995. It also rejected Anthony's continuing violations theory that the deterioration of the property was ongoing, because Anthony failed to provide facts establishing that FirstBank continued to commit "unlawful acts," as required to invoke the doctrine after its alleged misrepresentations that the

*Codrington v. Steadfast Insurance Co.*
1:19-cv-00026-MEM-EAH
Report & Recommendation
Page 12

property was insured. Rather, he was pointing out the continuing "ill effects" from the original violation. *Id.* at 230-31. The Virgin Islands Supreme Court affirmed.

Here, Codrington alleged that every day after Steadfast denied coverage extended the statute of limitations anew because Steadfast did not correct its improper denial of coverage. Dkt. No. 153 at 4. *Anthony* foreclosed that argument. And even if the denial was considered an illegal act, there was no evidence of any act subsequent to September 2010 to constitute continuing unlawful acts required to invoke the doctrine. *Id.* (citing cases).

In his Opposition, Codrington argued that the statute of limitations did not begin to run until June 21, 2018 and that the continuing violations doctrine tolled the statute of limitations from 2010 until June 21, 2018 when Plaintiff's claims "vested." Dkt. No. 155 at 1. Specifically, he contended that his claims did not "manifest" until the Consent Judgment and Release and Assignment of Rights were entered into on June 8, 2018. While Steadfast declined coverage under the policy for the underlying accident, it "continued to deny coverage and a defense when Plaintiff filed the complaint in the underlying litigation, . . . when Plaintiff filed the first amended complaint in the underlying litigation, . . . when their insured gave a sworn affidavit attesting to the relationship between Correa and Crosstech VI Inc. and the business structure of his companies, . . . when Plaintiff and Steadfast's insured entered into an agreement and assignment of rights, . . . [and] when Plaintiff filed the Complaint, Amended Complaint, and Second Amended Complaint in this litigation," continuing daily throughout the underlying case and to this day. *Id.* at 2-3. Codrington had

*Codrington v. Steadfast Insurance Co.*
1:19-cv-00026-MEM-EAH
Report & Recommendation
Page 13

no right to sue any of the Defendants in the instant case until June 21, 2018 when Crosstech VI and Correa assigned their rights in the underlying accident to him, and he timely filed his complaint in March 2019. *Id.* at 3-4. Codrington points to the deposition of Richard Dudek, Steadfast's AVP of Complex Claims, who testified that the attorney for Crosstech Boiler Services and Crossland tendered a claim to Steadfast on August 17, 2010 that was denied on September 7, 2010; after coverage was denied, the insureds were "never directly copied to be made aware of that decision, and Capdeville did not state in his tender of claim that the claim had no coverage." *Id.* at 4, citing Dkt. No. 155-1 (Dudek Dep.) at 25, 30, 36-38. Steadfast did not monitor the Codrington claim after it denied coverage and maintained the denial through the date of Dudek's deposition in November 2021. *Id.* citing Dkt. No. 155-1 at 43-45. Thus, Steadfast continued a "bad faith denial and refusal to provide a defense from August 17, 2010, through June 21, 2018, and up to today." *Id.* at 5.

Further, Steadfast's breach of a "continuing covenant" resulted in a cause of action each day the breach continued; therefore the statute of limitations began to run anew each day, and Codrington filed his complaint within the statute of limitations, *Id.*, citing *Christmas v. V.I. Water & Power Auth.*, 527 F. Supp. 843, 848 (D.V.I. 1981). He also asserted that *Anthony*, 58 V.I. 224, was distinguishable because Steadfast owed its insureds "an ongoing duty to insure and defend"; it was aware of the lawsuit that Codrington brought against its insureds, who had requested a defense, and that litigation continued even though Steadfast denied coverage and a defense. *Id.* at 6. Every day that the insureds went without coverage and a

*Codrington v. Steadfast Insurance Co.*
1:19-cv-00026-MEM-EAH
Report & Recommendation
Page 14

defense was a continuing violation of Steadfast's duties to its insureds. *Id*. at 6-7. As a result

of the denial, the insureds entered into the Assignment and Agreement not to Execute and

Consent Judgment in June 2018. Therefore, at the earliest, the statute of limitations for

Steadfast's breach of its duties to its insureds began on June 21, 2018, and Codrington's filing

of the complaint in March 2019 was within the statute of limitations. *Id*. at 7.

On February 7, 2023, after being assigned this case in September 2022, Dkt. No. 177,

Judge Malachy E. Mannion referred all pending dispositive motions to the undersigned for

R&Rs. Dkt. No. 190.

## DISCUSSION

Codrington's complaint, filed in April 2019, was removed to this Court on the basis of

diversity jurisdiction. Dkt. No. 1-3. He asserted claims of breach of the duty of good faith and

fair dealing, negligent and/or intentional misrepresentation, and fraudulent conduct against

Steadfast. *Id*. Steadfast sought summary judgment, asserting that Codrington's claims were

time-barred. The parties conducted limited discovery on this issue.

A federal court "must apply the substantive laws of its forum state in diversity actions,

and these include state statutes of limitations." *Stephens v. Clash*, 796 F.3d 281, 289 (3d Cir.

2015). Accordingly, the 2-year statute of limitations applies for negligent and intentional

misrepresentation claims, *see Brouillard v. DLJ Mtge. Capital, Inc*., Civ. No. 2014-0063, 2015

WL 6549224, at *4, 63 V.I. 788, 795 (V.I. 2015); and the 2-year statute of limitations applies

for the fraudulent conduct claim, *see Martin v Martin*, Civ. No. 2007-0117, 2010 WL 4962412,

at *6, 54 V.I. 379, 390 (V.I. 2010); 5 V.I.C. § 31(5)(A). Virgin Islands courts are split on whether a two-year or six-year statute of limitations applies for breach of the implied contract of good faith and fair dealing.[12]

A statute of limitations does not accrue until "the 'occurrence of the essential facts that give rise to th[e] cause of action.'" *Brouillard,* 63 V.I. at 795 (quoting *Anthony*, 58 V.I. 224, 227 (2013)). Codrington's automobile accident with Correa occurred in March 2007. Dkt. No. 1-3 ¶ 3.02. On August 17, 2010, Crosstech VI's attorney requested that Steadfast provide a defense in Codrington's lawsuit against Crosstech VI and Correa as a result of the 2007 accident per the indemnity obligations in the insurance policy. Dkt. No. 112-3 at 59-60. On September 7, 2010, a Steadfast responded to the attorney, in a three-page letter, stating that "there is no coverage . . . under the subject policy" because the policy did not cover bodily injury or property damage of any use or entrustment to others of any automobile. Dkt. No.

---

[12] Steadfast cited *Guardian Ins. Co. v. Khalil,* 863 V.I. 3 , 22 (V.I. Super. Ct. 2012), *declined to follow on other grounds by Certain Underwriters at Lloyd's of London v. Garcia* (V.I. Super. Ct. Nov. 25, 2015). The *Khalil* Court ruled that the breach of good faith and fair dealing claim, which focused on the alleged bad faith of the insurance company, was governed by the tort two-year statute of limitations for bad faith. In *Davies v. Certain Underwriters at Lloyds of London*, ST-2014-cv-00637, 2017 WL 3759810 at * 9 n.58 (V.I. Super. Aug. 25, 2017), an opinion issued by Judge Francois, the court followed the *Khalil* two-year statute of limitations for a breach of a good faith and fair dealing claim alleging bad faith by an insurance company. However, in a 2020 opinion by Judge Francois, *Pegasus Holding Grp. Stables, LLC v. Share,* No. ST-2014-CV-00069, 2020 WL 8020083, at *5 (V.I. Super. Aug. 21, 2020), the court rejected a two-year statute of limitations for breach of the duty of good faith and fair dealing (although this case did not allege bad faith) and held that the Virgin Islands 6-year statute of limitations applied. The Virgin Islands Supreme Court has not weighed in on this issue. In any event, whichever statute of limitations applies for this claim would not matter, since the claim would be barred under either statute of limitations.

112-3 at 80-82. Thus, on September 7, 2010, the date of denial of coverage, any claims Crosstech VI and Correa had under the policy accrued for statute of limitations purposes because the allegedly improper denial was the "essential fact" that would give rise to their causes of action. *Brouillard*, 63 V.I. at 795; *see also Wegfahrt v. Allstate Fire & Cas. Ins. Co.*, No. 5:19-CV-04493-JDW, 2019 WL 6310259, at *2 (E.D. Pa. Nov. 25, 2019) ("In evaluating correspondence from an insurance company, the question is what effect the correspondence would have on a reasonable recipient. If the correspondence, taken as a whole, demonstrates that the insurance company does not intend to provide coverage, then it constitutes a denial and triggers the accrual of the statute of limitations. Here, Allstate's letter in June 2011 did just that. It cited several reasons why the Policy did not provide coverage in Allstate's view."); *cf. Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214, 224 (3d Cir. 2005) (interpreting Pennsylvania statute for insurance bad faith claims and affirming that a claim accrues "when the insurer first provides definite notice of a refusal to indemnify or defend."). Presuming that Crosstech VI and Correa could assign their claims to Codrington, the accrual date of September 7, 2010 did not change for Codrington's claims either, as his claims were derivative of Crosstech VI and Correa's claims under the policy, given that an "assignee stands in the shoes of the assignor." *UMLIC VP LLC v. Matthias*, 364 F.3d 125, 131 (3d Cir. 2004).

Codrington did not indicate in his initial opposition to the motion for summary judgment when his claims accrued. Dkt. No. 115. In his supplemental response, Dkt. No. 155, he does not explicitly state that his claims accrued in 2010 with the denial letter sent to

Crosstech's counsel. Rather, he asserts that "the doctrine of continuing violation tolled the Statute of Limitations *from 2010* until June 21, 2018 when Plaintiff's claims vested." Dkt. No. 155 at 1 (emphasis added). The Court views this statement as an acknowledgment that Codrington's claims in the instant lawsuit "vested"[13] in September 2010. Taking that date, then, as the date of accrual, for his three causes of action against Steadfast, the two-year statute of limitations for the misrepresentation and fraud claims ran in September 2012, and even if the Court were to apply the six-year statute of limitations for breach of the duty of good faith and fair dealing, the limitations period ran in September 2016. Codrington first filed the lawsuit against Steadfast in April 2019—more than two and one-half years after the longest statute of limitations had run. Therefore, his claims must be dismissed as time-barred unless the continuing violation doctrine applies to toll the statute of limitations.

The Court looks to Virgin Islands law for tolling rules. *Wallace v. Kato,* 549 U.S. 384, 394 (2007). The continuing violation doctrine states that "when a claim involves continuing or repeated conduct, the limitations period does not begin to run until the date of the last injury or when the wrongful conduct ceased." *Anthony*, 58 V.I. at 230 (internal quotation marks omitted); *see also Brouillard,* 63 V.I. at 796–97 (quoting *Felter v. Norton,* 412 F.Supp.2d 118, 125 (D.D.C. 2006) for the proposition that "When courts apply the continuing violation doctrine, the claim will not be barred provided that at least one wrongful act occurred during

---

[13] Codrington provides no case law or other explanation that illuminates how the concept of "vesting" impacts its statute of limitations arguments.

the statute of limitations period and that it was committed in furtherance of a continuing wrongful act or policy or is directly related to a similar wrongful act committed outside the statute of limitations.").

In order to apply this doctrine, "(t)he plaintiff must make a threshold showing that his claim involved continual *unlawful acts,* not continual *ill effects* from an original violation before a court will consider whether the equitable doctrine is available." *Anthony*, 58 V.I. at 230 (internal citation and quotation marks omitted) (emphasis in original). When applying the continuing violation doctrine, a court asks: "(1) whether the alleged tort giving rise to the plaintiff's harm is recurring; (2) if so, whether the resulting injury is permanent; and (3) if so, when did the plaintiff know or could have known of the critical facts indicating that the injuries were likely to be permanent." *Poleon v. Gov't of Virgin Islands*, No. CV 2013-024, 2018 WL 3764086, at *15 (D.V.I. Aug. 8, 2018) (citing *In re Tutu Wells Contamination Litig.*, 909 F. Supp. 980, 988 (D.V.I. 1995)). In *Bluebeard's Castle, Inc. v. Hodge,* 2009 WL 891896, 51 V.I. 672 (D.V.I. App. Div. Apr. 1, 2009), *vacated on other grounds by Hodge v Bluebeard's Castle, Inc.,* VI, 2015 WL 3634032, 62 V.I. 671 (June 10, 2015), the court cited examples of continuing violations—applied in the context of trespass or nuisance when recurrent conduct or injury is involved, such as a physical encroachment or an invasion on land that is ongoing and may be abated. *Id.* at *6, 51 V.I. at 686. It has also been employed in lawsuits involving federal employment discrimination claims. *See, e.g., Glasgow v. Veolia Water N. Am. Operating Servs., LLC*, 2010 WL 3780966, at *5-*6 (D.V.I. Sept. 21, 2010).

Here, Codrington's claims as an assignee all accrued at a discrete point in time—September 7, 2010—when Steadfast denied coverage under its policy to Crosstech VI and declined to provide the insured a defense in the underlying lawsuit. That denial was a single act; the insureds did not challenge the denial such that Steadfast was called upon to deny the claim again (or again and again) based on a new or different argument or when any of the events occurred in the underlying litigation (including the assignment of rights) or in this litigation. Contrary to Codrington's assertion, Steadfast did not continue to deny the claims each day up to the present. The one denial on September 7, 2010 was Steadfast's permanent response to the request for defense and indemnification; it was not a recurring injury. *Poleon*, 2018 WL 3764086, at *15. Codrington's argument is a textbook example of continual *ill effects* from an original violation, not continued unlawful acts (as the various filings are not unlawful acts, and he does not allege anything else).[14] *Anthony*, 58 V.I. at 230; *see also Brouillard*, 63 V.I. at 796–97.

## CONCLUSION

Accordingly, for the reasons discussed above, the Court **RECOMMENDS** that Defendant Steadfast's Motion for Summary Judgment, Dkt. No. 112, be **GRANTED**.

---

[14] For the same reasons, Codrington's conclusory assertion that Steadfast had a "continuing covenant" with its insureds, Dkt. No. 155 at 5, without explaining how, fails. He also claimed that *Anthony* was distinguishable because Steadfast owed its insureds "an ongoing duty to insure and defend" but did not explain where that duty emanated from. *Id.* at 6.

*Codrington v. Steadfast Insurance Co.*
1:19-cv-00026-MEM-EAH
Report & Recommendation
Page 20

Any objections to this Report and Recommendation must be filed in writing within fourteen (14) days of receipt of this notice, 28 U.S.C. § 636(b)(1), and must "specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis of such objection." LRCi 72.3. Failure to file objections within the specified time shall bar the aggrieved party from attacking such Report and Recommendation before the assigned District Court Judge. *See, e.g., Thomas v. Arn*, 474 U.S. 140 (1985).

ENTER:

Dated: June 23, 2023                      /s/ Emile A. Henderson III
                                          EMILE A. HENDERSON III
                                          U.S. MAGISTRATE JUDGE

# DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. CROIX

| | | |
|---|---|---|
| **JAMES CODRINGTON,** | : | |
| *as Assignee of the rights of* | | |
| *Crosstech VI, Inc.,* | : | |
| | | |
| **Plaintiff** | : | **CIVIL ACTION NO. 1:19-26** |
| | | |
| **v.** | : | **(MANNION, J.)** |
| | | **(HENDERSON, M.J.)** |
| **STEADFAST INSURANCE CO. and** | : | |
| **DEEP SOUTH SURPLUS OF TEXAS,** | | |
| | : | |
| | | |
| **Defendants** | : | |

## <u>O R D E R</u>

Pending before the court is the report of United States Magistrate Judge Emile A. Henderson, III,[1] which recommends that defendant Steadfast's motion for summary judgment (Doc. 112) be granted. (Doc.

---

[1] In the plaintiff's objection to Judge Henderson's report and in the defendant's response thereto, both parties' counsel refer to Judge Henderson as "Magistrate". The title "magistrate" no longer exists in the U.S. Courts, having been changed from "magistrate" to "magistrate judge" in 1990. Judicial Improvements Act of 1990, 104 Stat. 5089, Pub. L. No. 101-650, §321 (1990) ("After the enactment of this Act, each United States magistrate . . . shall be known as a United States magistrate judge."). Counsel are reminded to use the correct title in the future, when referring to Judge Henderson.

**EXHIBIT**
**4**

215). The plaintiff has filed an objection to the report (Doc. 217) to which Steadfast has responded (Doc. 218).

When objections are timely filed to the report and recommendation of a magistrate judge, the district court must review *de novo* those portions of the report to which objections are made. 28 U.S.C. § 636(b)(1); *Brown v. Astrue*, 649 F.3d 193, 195 (3d Cir. 2011). Although the standard is *de novo*, the extent of review is committed to the sound discretion of the district judge, and the court may rely on the recommendations of the magistrate judge to the extent it deems proper. *Rieder v. Apfel*, 115 F.Supp.2d 496, 499 (M.D. Pa. 2000) (citing *United States v. Raddatz*, 447 U.S. 667, 676 (1980)).

Neither party takes issue with the procedural background set forth in Judge Henderson's report or the statement of material facts relied upon by Judge Henderson in support of his recommendation. As the court writes for the parties who are intimately familiar with the background and facts of this matter which has been ongoing for many years, the court need not reiterate the entirety of those, and instead, incorporates the procedural and factual background set forth by Judge Henderson herein.

Suffice it to say that the plaintiff has a second amended complaint pending before the court which sets forth claims against Steadfast under 22 V.I.C. §2 for violating the duty of good faith and fair dealing; for negligent

and/or intentional misrepresentation; and for fraudulent conduct, in relation to the denial of an insurance claim the rights to which the plaintiff is the assignee. (Doc. 83). Steadfast has filed a motion for summary judgment arguing that the plaintiff's claims are barred by the applicable statutes of limitations. (Doc. 112).

In considering Steadfast's motion for summary judgment, Judge Henderson found that the 2-year state statute of limitations applies to the plaintiff's negligent and intentional misrepresentation claims, as well as to the fraudulent conduct claim. (Doc. 215, p. 14) (citations omitted). With respect to the plaintiff's breach of the implied duty of good faith and fair dealing, Judge Henderson provided that Virgin Islands courts are split on whether a 2-year or 6-year statute of limitations would apply. However, regardless of which would apply, Judge Henderson determined that the plaintiff's claim would be barred. (Doc. 215, p. 15) (citations omitted).

In finding the plaintiff's claims barred, Judge Henderson noted the plaintiff's accident with Correa[2] occurred in March 2007. On August 17,

---

[2] As indicated in the report, the plaintiff was involved in an automobile accident with Correa, who was a Crosstech VI employee. The plaintiff filed a lawsuit in the Virgin Islands Superior Court in 2007 after the accident. Crosstech VI, Correa and another entity, Crossland, tendered defense and indemnification of the plaintiff's claims to Steadfast, which denied the claims.

*(footnote continued on next page)*

2010, Crosstech VI's attorney requested Steadfast provide a defense in the plaintiff's lawsuit against Crosstech VI and Correa as a result of the accident. On September 7, 2010, Steadfast declined coverage. This is the date on which Judge Henderson found any claims Crosstech VI and Correa had under the policy accrued, and because the plaintiff stepped into their shoes as assignee, the date on which any claims by the plaintiff accrued as well. Given the accrual date, Judge Henderson found the statute of limitations on the plaintiff's misrepresentation and fraud claims ran in September 2012, and even applying the 6-year statute of limitations to the breach of the duty of good faith and fair dealing claim, the limitations period would have run in September 2016.

The plaintiff argued in his supplemental response to Steadfast's motion for summary judgment that the continuing violation doctrine applies to toll the statute of limitations from 2010, when the claim was denied, until June 21, 2018, when the consent judgment was entered. Considering this argument, Judge Henderson looked to Virgin Islands case law and determined that the denial of coverage by Steadfast in September 2010 was

---

As a result of the denial, in June 2018, the three entities entered into a consent judgment in favor of the plaintiff and assigned all claims they had against Steadfast to him.

a single act and a permanent response to the request for defense and indemnification. Steadfast was not called upon to deny the claim again or repeatedly after the initial denial. As a result, Judge Henderson found the continuing violation doctrine did not act to toll the statute of limitations and Steadfast's motion for summary judgment should be granted.

The plaintiff objects to Judge Henderson's report arguing only that the denial of insurance was not a single act and does not fall under the tolling provisions of the continuing violations doctrine. While Steadfast denied the claim in September 2010, the plaintiff argues that its duty to indemnify did not arise until June 2018 when the consent judgment was entered. Because Steadfast did not indemnify Crosstech VI or Correa when the consent judgment was entered, the plaintiff argues that Steadfast's unlawful acts continued. And, because the plaintiff filed this action in March 2019, approximately nine months after the consent judgment was filed, he argues he is well within applicable statutes of limitations.

As indicated, the plaintiff raised this argument in his supplemental brief in opposition to Steadfast's motion for summary judgment. Judge Henderson noted, correctly so, that the plaintiff's argument was not properly supported. Upon review, the court agrees with Judge Henderson that the denial issued by Steadfast was a permanent response to the request to

- 5 -

defend and to indemnify. Steadfast denied coverage finding that there was no coverage available at all under the policy as the automobile accident exclusion acted to bar any coverage whatsoever for the automobile accident for which coverage was sought. As such, the court finds, as did Judge Henderson, that the denial in September 2010 was a single act – a denial of all coverage, including a denial of the duty to defend and to indemnify, and plaintiff has failed to provide any support that those duties should be separated in this case.

Based upon the foregoing, **IT IS HEREBY ORDERED THAT:**

(1) The plaintiff's objection to the report and recommendation of Judge Henderson **(Doc. 217)** is **OVERRULED**.

(2) The report and recommendation of Judge Henderson **(Doc. 215)** is **ADOPTED IN ITS ENTIRETY AS THE DECISION OF THE COURT**.

(3) Defendant Steadfast's motion for summary judgment **(Doc. 112)** is **GRANTED**.

(4) The Clerk of Court is directed to **ENTER JUDGMENT IN FAVOR OF DEFENDANT STEADFAST AND AGAINST THE PLAINTIFF**.


_s/ Malachy E. Mannion_
**MALACHY E. MANNION**
**United States District Judge**

**DATED: September 29, 2023**
19-26-04

- 7 -